ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCESIÓN DE RUBÉN MUÑOZ PÉREZ, COMPUESTA POR ANGÉLICA MARÍA MUÑOZ LUGO Y RUBÉN MUÑOZ LUGO Y EVELYN LUGO CORDERO<br><br>Apelados<br><br>v.<br><br>MUNICIPIO DE TOA ALTA; AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelante | KLAN202500160 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: D DP2012-0278<br><br>Sala: 402<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante *nos* el Municipio de Toa Alta (Municipio o apelante) y nos solicita que revisemos una Sentencia pronunciada el 7 de noviembre de 2024 y notificada el 15 de noviembre de 2024 por el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de Bayamón. Mediante dicho dictamen, el TPI declaró ha lugar a la demanda, encontrando así que el Municipio debía indemnizar a la señora Evelyn Lugo Cordero (señora Lugo Cordero) y a la sucesión (Sucesión) de su esposo, el señor Rubén Muñoz Pérez (señor Muñoz Pérez), compuesta por ella, la señora Angélica María Muñoz Lugo (señora Muñoz Lugo) y el señor Rubén Muñoz Lugo (señor Muñoz Lugo) (en conjunto, apelados) por los daños y perjuicios sobre la propiedad de los apelados, valorados en $100,000.00, y por las angustias mentales sufridas, valuadas en $50,000.00 por cada demandante. Asimismo, el foro apelado

determinó que hubo una incautación de hecho, por lo cual procedía que el Municipio resarciera la justa compensación por el precio tasado de la propiedad. Por último, el foro primario le imputó temeridad al apelante y le sancionó a abonar $35,000.00 en honorarios de abogado.

Por los fundamentos que se exponen a continuación, se *modifica solo a fines de ajustar la cuantía a resarcir y, variada así, se confirma* la *Sentencia* apelada.

**I.**

El 26 de marzo de 2012, el señor Rubén Muñoz Pérez (señor Muñoz Pérez) y la señora Evelyn Lugo Cordero (señora Lugo Cordero) (en conjunto, apelados) presentaron una *Demanda* sobre daños y perjuicios contra varias entidades, incluyendo al Municipio. Arguyeron que eran dueños de un predio ubicado en Toa Alta; este tenía un sumidero en su parte posterior porque se encontraba dentro de una cuenca hidrológica que acumulaba agua. Especificaron que, entre 1999 a 2001, el Municipio construyó una nueva entrada para su vertedero, el cual queda en la misma carretera que la propiedad de los apelados. Asimismo, trazaron que, entre 2002-2004, la Autoridad de Acueductos y Alcantarillados (AAA) erigió un tanque de tratamiento que queda frente al predio. Argumentaron que, luego del cimiento de las obras referidas, el agua que se empozaba en la depresión ubicada en el patio se tardaba más en secar; para remediar esto, le pidieron ayuda al Municipio, quien les facilitó una bomba para drenar el agua acumulada, pero esta dejó de funcionar eventualmente. Puntualizaron que, el 10 de diciembre de 2011, cayeron sobre el área unas lluvias torrenciales que propiciaron que llegaran a la finca escorrentías provenientes de la rampa de la entrada del vertedero; por ello, se inundó el predio hasta el segundo escalón del sótano de la casa. Posterior a este evento, el agua se empozó permanentemente en el patio.

Luego de varias modificaciones y asuntos procesales que resultan innecesarios pormenorizar, los apelados presentaron una cuarta *Demanda Enmendada* el 3 de enero de 2018; mediante esta, alegaron que, antes de la construcción de la nueva entrada al vertedero del Municipio y de la planta de tratamiento de la Autoridad de Acueductos y Alcantarillados (AAA), no había historial de inundaciones y que las obras mencionadas provocaron aluviones continuos que resultaron en una incautación de hecho de su terreno.

El 3 de junio de 2021, se notificó el fallecimiento del señor Muñoz Pérez y se solicitó la correspondiente sustitución de parte para incluir a sus sucesores; esta fue autorizada por el tribunal el 20 de septiembre de 2021. Posteriormente, el 11 de noviembre de 2021, el apelante y los apelados presentaron unas solicitudes de sentencia sumaria que fueron denegadas por el foro primario. Por ello, se llevó a cabo el juicio, solo quedando la AAA y el Municipio como codemandados luego de una serie de desistimientos.

Así las cosas, el foro apelado pronunció una *Sentencia* el 7 de noviembre de 2024, la cual fue notificada el 15 de noviembre de 2025. Mediante esta, el TPI responsabilizó unilateralmente al Municipio por los daños alegados en la *Demanda* y que procedía la causa de acción de expropiación a la inversa. Con esto, lo condenó a satisfacer (1) $50,000.00 en angustias mentales para cada uno de los demandantes; (2) $100,000.00 por los daños a la propiedad; (3) la justa compensación por el valor de la propiedad debido a la incautación de hecho del predio, y (4) $35,000.00 por honorarios de abogado por entender que el Municipio incurrió en conducta temeraria.

Inconforme, el Municipio presentó una reconsideración y solicitud de determinación de hechos el 2 de diciembre de 2024. La reconsideración fue declarada no ha lugar mediante una *Resolución*

emitida por el foro primario el 22 de enero de 2025, pero notificada el 27 de enero de 2025.

Insatisfecho aún, el 26 de febrero de 2025, el Municipio compareció ante *nos* mediante un recurso de apelación y señaló la comisión de los siguientes errores:

> Erró el TPI al omitir [o] descartar hechos esenciales, probados y no refutados, que inciden sobre el elemento de la causalidad y exoneran al Municipio de cualquier responsabilidad civil.
>
> Erró el TPI al responsabilizar al Municipio por los daños sufridos por los Demandantes-Apelados porque no se pasó prueba de la alegada negligencia en la construcción de la entrada [d]el vertedero ni se demostró la relación causal entre la referida construcción y las inundaciones en el Predio; no se probó un acto u omisión negligente por parte del Municipio, ni la relación causal entre el alegado acto negligente con los daños sufridos por los Demandantes-Apelados.
>
> Erró el TPI al determinar que las actuaciones del Municipio resultaron en una incautación física de la propiedad de los aquí Demandantes-Apelados que configura la acción de expropiación a la inversa.
>
> Erró el TPI al conceder remedios contrarios al derecho vigente [*sic*] porque la cuantía establecida para el resarcimiento de los daños excede los límites establecidos y constituye una compensación múltiple, además de que no determina la cuantía de la justa compensación por el valor de la propiedad tras determinar, aunque de forma errada, que se configuró una expropiación a la inversa.

Examinado el recurso de *Apelación*, este Tribunal articuló una *Resolución* el 17 de marzo de 2025, concediéndole un término de treinta (30) días luego de que se acogiera la transcripción de la prueba oral estipulada a los apelados para que expresaran su posición sobre el asunto. El 12 de septiembre de 2025, los apelados presentaron su *Recurso de Oposición a [la] Apelación*. Con el beneficio de la comparecencia de ambas partes y con la presentación de la transcripción de la prueba oral, procedemos a resolver.

**II.**

**A. Apreciación de la prueba**

En materia de apreciación de la prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, esta Curia evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V; véase *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645 (1986). Por tanto, como foro apelativo, ni debemos intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que realiza un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de

evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que, el foro de instancia es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR*, *supra*; véase *Trinidad v. Chade*, 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de las de Procedimiento Civil, *supra*; véase *Rivera Menéndez v. Action Services*, *supra*, págs. 448-449; *Monllor Arzola v. Soc. de Gananciales*, 138 DPR 600 (1995). No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172, 181 (1985).

### B. La causa de acción por daños y perjuicios

El Artículo1802 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5141, establece que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[1] Como sabemos, en materia de daños y perjuicios, para que prospere una reclamación bajo el precitado artículo, tiene que darse la concurrencia de tres elementos básicos, a saber: (1) un acto u omisión culposo o negligente del demandado; (2) la presencia de un daño físico o emocional en el demandante, y (3) que exista un nexo causal entre el daño sufrido y el acto u

---

[1] Al recurso de epígrafe, le es aplicable el Código Civil de 1930, posteriormente derogado por la Ley Núm. 55-2020, mejor conocida como el Código Civil de 2020.

omisión. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); véase *Cruz Flores et al. v. Hospital Ryder et al.*, 210 DPR 465 (2022); *Pérez et al. v. Lares Medical et al.*, 207 DPR 965 (2021); *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

Un *acto culposo o negligente* se define como la falta del debido cuidado, según la figura de la persona de prudencia común y ordinaria. *Pérez et al. v. Lares Medical et al.*, *supra*; *López v. Porrata Doria*, 169 DPR 135 (2006). Sobre el concepto de *culpa*, nuestro más alto Foro ha reiterado que consiste en no anticipar las consecuencias racionales de un acto u omisión. *López v. Porrata Doria*, *supra*, pág. 151. En cambio, la responsabilidad civil extracontractual producida por omisiones negligentes surge cuando el "[a]legado causante del daño quebranta un deber impuesto o reconocido por ley". *Hernández Vélez v. Televicentro*, 168 DPR 803 (2006).

Por otra parte, el *daño* comprende todo menoscabo material o moral que sufre una persona en sus bienes, propiedad o patrimonio, por el cual otro sujeto ha de responder. *García Pagán v. Shiley Caribbean*, 122 DPR 193 (1988). Es decir, el quebranto puede infligirse sobre los bienes vitales naturales, la propiedad o el patrimonio del perjudicado. *Nieves Díaz v. González Massas, supra*, pág. 845. Ahora bien, el daño sufrido debe ser real y palpable, no vago o especulativo. *Soto Cabral v. ELA*, 138 DPR 298 (1995). El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés lesionado. *García Pagán v. Shiley Caribbean,* 122 DPR 193 (1988); *Rodríguez Cancel v. AEE,* 116 DPR 443 (1985). Así pues, se requiere la existencia certera de un daño porque, de lo contrario, el reclamo sería especulativo y no adjudicable en derecho.

En cuanto al requisito de la *relación causal*, el estándar aplicable es el de *causalidad adecuada*. La doctrina de la causalidad adecuada —la cual rige en Puerto Rico— dispone que "no es causa

toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Sucn. Mena Pamias et al. v. Meléndez et al., supra*; *Nieves Díaz v. González Massas, supra.* La *relación causal* —imprescindible en una reclamación en daños y perjuicios— es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González* Massas, *supra,* págs. 844-845. Este concepto de la causa presupone que la ocurrencia del daño que da base a la reclamación sea *previsible* dentro del curso normal de los acontecimientos. *López v. Porrata Doria, supra,* págs. 151-152. Por ello, el deber de indemnizar requiere que haya un nexo causal entre el daño y el hecho que lo originó, pues solo se resarcirán los menoscabos que sean consecuencia del suceso que obliga a la indemnización. *Estremera v. Inmobiliaria Rac. Inc.,* 109 DPR 852 (1980). Así pues, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso —mirándolo retrospectivamente— este parece ser la consecuencia razonable y común de la acción u omisión aludida. *Santiago v. Supermercados Grande,* 166 DPR 796 (2006).

Los conceptos de *negligencia* y *causalidad adecuada* exigen que, de algún modo, se cumpla con el criterio de previsibilidad. No obstante, para fines de la negligencia, lo importante es identificar si el demandado podía prever que su acción u omisión podría causar algún daño. En otro sentido, con el propósito de determinar si existe causa legal o adecuada, se debe justipreciar si el demandado podía predecir que su acción u omisión podría causar el tipo de daño que se produjo. *Colón, Ramírez v. Televicentro de P.R.,* 175 DPR 690 (2009).

Empero, no es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia *natural y probable* del acto u omisión

negligente. *Tormos Arroyo v. DIP,* 140 DPR 265 (1996). La omisión que genera responsabilidad civil por negligencia es aquella conducta que constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley cuando, de haberse realizado el acto omitido, se hubiera evitado el daño. *Soc. Gananciales y. González Padín, Co.,* 117 DPR 94 (1986). Es decir, ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño. *Arroyo López v. E.L.A.,* 126 DPR 682 (1990).

### C. La discreción del Tribunal de Primera Instancia

La *discreción* es la facultad de los tribunales de justicia para resolver de una forma u otra, y de escoger entre varios cursos de acción. Al foro primario se le reconoce una amplia discreción; sus decisiones merecen gran deferencia, debido a que es el juzgado que conoce las particularidades del caso, tiene contacto con los litigantes y examina la prueba. La única limitación es que la medida sea adecuada y razonable. El ejercicio adecuado de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad. La *discreción* es una forma de razonabilidad aplicada al discernimiento judicial con el propósito de llegar a una conclusión justiciera. Se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. Los tribunales apelativos no debemos intervenir con las determinaciones discrecionales del foro primario con el objetivo de sustituir su criterio por el nuestro. No obstante, esa deferencia cede cuando el Tribunal de Primera Instancia actúa con prejuicio, parcialidad, incurrió en craso abuso de discreción o incurrió en error manifiesto. *Citibank et al v. ACBI et al,* 200 DPR 724 (2018).

Ahora bien, no resulta fácil precisar cuándo un tribunal abusa de su discreción. Sin embargo, no debemos tener duda de que el adecuado ejercicio de discreción descansa en un juicio de razonabilidad judicial para llegar a una conclusión justiciera.

*Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170 (1992); *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Como sabemos, existen ciertas guías para poder determinar cuándo un tribunal abusa de su discreción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009). Así pues, un tribunal incurrirá en un abuso de discreción —*inter alia*— cuando el juez no toma en cuenta e ignora en la decisión que emite —sin fundamento para ello— un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario y sin justificación o fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en este, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *García v. Padró,* 165 DPR 324 (2005)*; Pueblo v. Ortega Santiago,* 125 DPR 203 (1990).

### D. El testimonio pericial

Los procesos en los tribunales se rigen por normas de derecho sustantivo, las reglas que conducen el trámite de la causa y el derecho evidenciario dirigido a probar los hechos alegados y a descubrir la verdad de forma justa, rápida y económica. E. Rivera García, *El valor del testimonio pericial en los procesos judiciales*, 47 Rev. Jur. U Inter PR 87 (2013). La integración y el análisis de estos aspectos inmersos en un juicio le permiten al juzgador de los hechos dirimir controversias y, en consecuencia, fijar las responsabilidades según el estado de derecho. En esencia, el derecho probatorio prescribe las normas para la presentación, rechazo, admisibilidad, evaluación y suficiencia de la evidencia que las partes tienen a bien presentar. *Íd.*

Específicamente, la Regla 702 de las de Evidencia, 32 LPRA Ap. VI, dispone que, cuando el conocimiento científico, técnico o especializado sea de ayuda para el juzgador poder entender la prueba o determinar un hecho en controversia, una persona

capacitada como perito conforme a la Regla 703 de las de Evidencia, *supra*, podrá testificar en forma de opiniones o de otra manera. A su vez, la Regla 702 de las de Evidencia, *supra*, establece que la determinación del valor probatorio del testimonio dependerá diferentes factores, a saber:

> (a) si el testimonio está basado en hecho o información suficiente;
> (b) si el testimonio es el producto de principios y métodos confiables;
> (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
> (d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
> (e) las calificaciones o credenciales de la persona testigo; y
> (f) la parcialidad de la persona testigo. *Íd.*

Además, la admisibilidad del testimonio pericial será determinada por el tribunal de acuerdo con los factores enumerados en la Regla 403 de las de Evidencia, *supra*. De manera tal que, evidencia pertinente podrá ser excluida cuando su valor probatorio quede sustancialmente superado por los siguientes factores: (a) riesgo de causar perjuicio indebido; (b) riesgo de causar confusión; (c) riesgo de causar desorientación del jurado; (d) dilación indebida de los procesos, o (e) innecesaria presentación de prueba acumulativa.

Referente a las reglas mencionadas, la Regla 403 de Evidencia, *supra*, exige considerar el valor probatorio de la evidencia; mientras que la Regla 702 del mismo cuerpo reglamentario, *supra*, hace una enumeración no taxativa de factores a determinar el valor probatorio del testimonio pericial. E.L. Chiesa Aponte, *Compendio de evidencia (En el sistema adversarial)*, Ciudad de México, Ed. Tirant lo Blanch, 2021, págs. 268-269. Además, expresa que, para determinar si la prueba pericial es admisible, el tribunal estima su valor probatorio a la luz de los elementos enumerados en la Regla 702 de las de Evidencia, *supra*, y los sopesa con el perjuicio indebido que podría generar la admisión de esa evidencia. *Íd.* El proceso para llamar a un perito a testificar es el siguiente:

> La parte llama como testigo a un perito; sino hay señalamiento de [la] parte adversa solicitando una determinación previa de admisibilidad bajo la regla 109 (A), el testigo podrá testificar y comenzar el interrogatorio para acreditar que el testigo está cualificado como [tal] bajo la regla 703; el proponente puede pedir un "*ruling*" de cualificación o, sencillamente, continuar con el interrogatorio. En ausencia de objeción o si el tribunal determina que está cualificado, el perito comenzará su testimonio sob[r]e los hechos en controversia. Puede ocurrir que la parte adversa objete la cualificación del perito y hasta cuestione si su testimonio es admisible bajo la regla 702. También, puede presentarse una "*moción in limine*" para que se determine antes del juicio si el tribunal va a permitir el testimonio pericial. El planteamiento del adversario sería que no se satisface la regla 702, que remite a la regla 403, y podría incluir lo relativo a las credenciales del perito. *Íd.*, págs. 270-271. (Notas al calce omitidas).

Por su parte, para clasificar a una persona como perito, la Regla 703 de las Evidencia, *supra*, indica que:

(a) toda persona está calificada para declarar como testigo pericial, si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio. Si hubiese objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberá ser probado antes de que la persona testigo pueda declarar.

(b) el especial conocimiento, destreza, experiencia, adiestramiento o instrucción de una persona que es testigo pericial podrá ser probado por cualquier evidencia admisible, incluyendo su propio testimonio.

(c) la estipulación sobre la calificación de una persona perita no es impedimento para que las partes puedan presentar prueba sobre el valor probatorio del testimonio pericial.

Dado el caso de que la prueba pericial descanse parcialmente en el valor probatorio que le dé el juzgador de los hechos, consiste en un elemento vital la valoración y adjudicación de la credibilidad del testigo perito. Es por esta razón que, al momento de evaluar la confiabilidad de la prueba pericial, se deberá examinar si la teoría o técnica subyacente ha sido o podría ser probada; ha sido objeto de revisión por la comunidad científica y ha sido publicada; el índice de error de una técnica particular, y la aceptación general en la comunidad científica. R. Emmanuelli Jiménez, *La nueva Regla 702, un cambio fundamental en la presentación de prueba pericial*, 44 Rev. Jur. U Inter PR 341 (2010). Por lo que, el apoyo que tenga un

testimonio pericial en estos criterios abona a su confiabilidad y, por ende, a su valor probatorio. *Id.*

De igual forma, inciden las calificaciones o credenciales de la persona perito. Sobre este aspecto, debemos tener en cuenta que las calificaciones de un perito son fundamentales para asignarle valor probatorio. *Íd.*, pág. 347. Ello no significa que necesariamente se evaluarán únicamente las credenciales académicas; sino que, también, será objeto de apreciación la experiencia del perito al participar en casos similares.

Cónsono con lo anterior, al momento de evaluar si una persona se encuentra apta para ofrecer un testimonio pericial sobre determinada materia, el criterio rector no debe ser auscultar dentro de qué campo esa persona ha dedicado la mayor parte de sus estudios y experiencias de trabajo, sino que evaluar la experiencia, entrenamiento, o preparación académica que dicha persona posee en el campo para el cual sea cualificado como experto.[2] Por consiguiente, al momento de determinar si se adopta o descarta el testimonio del perito, el foro de instancia deberá considerar: 1) las calificaciones del perito; 2) la solidez de su testimonio; 3) la confiabilidad de la ciencia o técnica utilizada, y 4) la parcialidad del perito. *Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R.*, 150 DPR 658 (2000).

En cuanto a estos factores, cabe precisar que el juzgador de hechos no está obligado a aceptar las conclusiones de un perito y tiene facultad de rechazarlo cuando, luego de evaluar su testimonio, concluye que este no merece credibilidad. *S.L.G. Font Bardón v. Mini Warehouse*, 179 DPR 322 (2010). Además, la Regla 110 (D) de las de Evidencia, *supra*, versa sobre la evaluación y suficiencia de la prueba y establece dos normativas de carácter general al momento de evaluar la valoración de la prueba testimonial de los testigos. En primera instancia, el inciso (D), expone que la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente

---

[2] *Castrodad Fernández v. ENCO Manufacturing*, KLCE0700679 (2007).

de cualquier hecho, salvo que otra cosa se disponga por ley. Por otro lado, el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más conveniente. *Íd.*, R. 110 (E). Por lo que, no podemos perder de perspectiva que un perito es una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia que le permite formular una opinión que sirva de ayuda al juzgador. *Íd.*

El perito es la persona entendida, el individuo competente e idóneo por detentar ciertas aptitudes y conocimientos, y por poseer una adecuada capacidad. *Id.* El propósito último de la prueba pericial es ayudar al juzgador de los hechos. En tanto, la Regla 110 (U) de las de Evidencia, *supra*, establece que "[c]uando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha". *Íd.*

### E. Límite de responsabilidad extracontractual de un Municipio

Nuestro ordenamiento limita la responsabilidad civil extracontractual de un municipio. El Artículo 15.004 de la *Ley de Municipios Autónomos de Puerto Rico* decretaba que las reclamaciones por daños y perjuicios a la persona o propiedad ocasionados por el ente gubernamental que se incoaran contra un municipio no permitirían el resarcimiento por más de $75,000.00. 21 LPRA sec. 4704 (Supl. 2020).[3] Si mediante una misma acción u omisión municipal se le ocasionan daños a más de una persona o cuando lo ocurrido le dé derecho al perjudicado a instar varias

---

[3] Esta ley fue derogada por el Código Municipal de Puerto Rico, Ley Núm. 107-2020. Este cuerpo contiene una disposición idéntica al articulado citado en su Artículo 1.052. 21 LPRA sec. 7083.

causas de acción distintas, la cuantía indemnizada no podrá exceder los $150,000.00. *Íd.*

Asimismo, para entablar cualquier acción por responsabilidad civil extracontractual contra un municipio, es necesario que se notifique al alcalde mediane un escrito que contenga la fecha, lugar, causa y naturaleza del menoscabo adolecido. *Íd.*, sec. 4703. Se deberá puntualizar la cuantía de compensación monetaria o el remedio solicitado según daño, los nombres y direcciones de sus testigos y la dirección del reclamante; de aplicar, incluir dónde recibió tratamiento médico. *Íd.* Esta notificación se realizará por correo certificado o mediante diligenciamiento personal u otro método fehaciente permitido por ley. *Íd.* El escrito deberá entregarse dentro de los noventa (90) días después de que el reclamante hubiese conocido sobre el menoscabo. *Íd.* Si el damnificado está mental o físicamente indispuesto para realizar la notificación, tendrá un término de treinta (30) días siguientes al cese de la aludida incapacidad para notificar a la alcaldía sobre el daño. *Íd.*

## F. Doctrina de la compensación múltiple

Por cuestiones de economía procesal y accesibilidad a la justicia, es permisible presentar múltiples causas de acción en una misma demanda. Sin embargo, existe una prohibición del otorgamiento de múltiples remedios emanados de un mismo menoscabo. *Futurama Imp. Corp. v. Trans Caribbean,* 104 DPR 609 (1976).[4] Es decir, es impermisible que un reclamante reciba varias compensaciones por un mismo perjuicio. *Íd.* La determinación sobre si se infringe la doctrina de compensación múltiple requiere un análisis de las circunstancias del caso y que el juzgador sopese las posturas de las partes. *Íd.*, pág. 614.

---

[4] Véase el Artículo 1538 del Código Civil de Puerto Rico, Ley Núm. 55-2020, 31 LPRA sec. 10803. Aunque el articulado mencionado es inaplicable a este recurso, es ilustrativo sobre la importancia que ostenta esta prohibición en nuestro ordenamiento.

### G. Expropiación a la inversa

Nuestra Constitución consagra que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA Tomo 1. De acuerdo con esto, nuestro Más Alto Foro ha establecido que el Estado tiene la potestad de expropiar una propiedad privada para fines públicos, ya sea mediante una acción de expropiación, imponiendo restricciones reglamentarias o a través de la incautación física de una finca por afectación sustancial de su uso. *Aner Investment Corp. v. J.P.,* 148 DPR 241 (1999); *Velázquez Velázquez v. ELA*, 135 DPR 84 (1994). Esta facultad solo prospera si el inmueble se expropia para fines públicos, lo cual implica "la obligación de pagar una justa compensación". *Íd.*; *Culebra Enterprises Corp. v. ELA*, 143 DPR 935 (1997). En otras palabras, "para que el Estado pueda expropiar forzosamente una propiedad privada, la Constitución exige que pague una justa compensación, destine el bien expropiado a un fin o uso público y proceda con sujeción a las leyes que regulan este procedimiento en nuestra jurisdicción". *Adm. Terrenos vs. Ponce Bayland*, 207 DPR 586 (2021).

Como norma general, el Estado acciona su facultad con la presentación de un recurso de expropiación. *Culebra Enterprises Corp. v. ELA, supra*, pág. 946. Empero, el Estado puede ocupar o incautar excepcionalmente un derecho real sin haber instado un procedimiento de expropiación forzosa o consignado un resarcimiento por justa compensación. *Amador Roberts et als. v. ELA,* 191 DPR 268, 279 (2014); *ELA v. Northwestern Const., Inc.,* 103 DPR 377, 382 (1975). En esos casos, el propietario puede presentar una acción de expropiación a la inversa. *Amador Roberts et als. v. ELA, supra*; *Aner Investment Corp. v. J.P., supra*, pág. 283.

Mediante la acción de expropiación a la inversa, se avala el cumplimiento del Estado con el debido proceso de ley al infringir el derecho propietario de una persona. *Amador Roberts et als. v. ELA, supra.* Se conoce como expropiación a la inversa, debido a que "en ausencia de compensación o de un procedimiento de expropiación iniciado por el Estado, la insta el dueño de la propiedad contra el Estado para obtener la compensación a la que tiene derecho". *Íd.,* pág. 280. Con la presentación de esta causa de acción, el propietario tendrá el peso de la prueba para demostrar que una entidad pública ha ocupado o incautado físicamente su propiedad. *Íd.*

El Estado tiene la obligación de compensar justamente cuando lleva a cabo una incautación de hecho mediante la afectación considerable del uso de la propiedad, sea física o reglamentariamente. *Culebra Enterprises Corp. v. ELA, supra,* pág. 947. Esto implica que un dueño no puede utilizar o excluir a otros del uso de su inmueble.

Para preciar si hubo o no una incautación de hecho, el tribunal deberá sopesar "distintos valores para obtener un equilibrio dinámico y razonable entre los intereses particulares y los de la comunidad". *Íd.,* pág. 948. Así, el tribunal deberá ponderar sobre criterios como: (1) la naturaleza de la acción gubernamental; (2) el impacto económico de la medida sobre las personas o entidades afectadas, y (3) si el impacto económico sobre la persona es menor que el interés protegido por la medida. *Íd.*

### III.

En el caso ante *nos*, el apelante arguyó que el TPI erró al no considerar ciertos hechos que inciden sobre la causalidad del daño y exoneran al Municipio de responsabilidad civil extracontractual. Alegó, además, que el foro primario incidió al responsabilizar al Municipio a pesar de que ni se pasó prueba sobre la negligencia en la construcción de la entrada del vertedero ni se demostró el nexo causal entre la inundación ocurrida el 10 de diciembre de 2011 y la

obra aludida; es decir, no se logró establecer un acto u omisión o vínculo entre las actuaciones del apelante y el menoscabo. Asimismo, argumentó que el foro apelado se equivocó al determinar que los actos del Municipio constituyeron una incautación física de la propiedad y, por lo tanto, entender que procedía la causa de acción de expropiación a la inversa. Por último, apuntó que el TPI actuó incorrectamente al conceder varios remedios que no solo violentan la doctrina de compensación múltiple, debido a que se adjudicó una partida por daños y perjuicios y otra correspondiente a la justa compensación por la incautación de hecho argüida, sino que rebasan monetariamente los límites estatutarios establecidos sobre la responsabilidad extracontractual de un municipio por actos u omisiones negligentes; también, pormenorizó que el foro *a quo* no especificó la cantidad correspondiente a la justa compensación.

Por su parte, los apelados recalcaron que el TPI tuvo la oportunidad de observar y evaluar la prueba testifical y le dio credibilidad a lo que entendía correcto y viceversa; específicamente, le restó valor probatorio a aquello que consideró contradictorio o insuficiente, lo cual incluyó el testimonio del perito del Municipio, el ingeniero Raúl Colón Vincenty (ingeniero Colón Vincenty). Asimismo, enfatizaron que se pasó prueba suficiente sobre la negligencia en la construcción de la entrada del vertedero municipal, incluyendo la falta de gestión de permisos de las agencias pertinentes, por lo cual procedía responsabilizar al ente gubernamental por no cumplir con su deber de cuidado. Además, alegaron que se produjo una incautación de hecho tácita porque la inundación constante del sumidero, la cual a veces llegaba hasta el segundo escalón del sótano del inmueble, les privaba parcialmente del uso de su terreno y no se les había compensado justamente por ello; esto violenta, según ellos, su derecho constitucional al disfrute de su propiedad.

Por estar íntimamente relacionados, discutiremos los primeros dos señalamientos de error de forma conjunta. *Veamos.*

Según el derecho que antecede, el que le cause daño a otro o a su propiedad por actos o conductas negligentes, está obligado a resarcirlo. Para que una causa de acción en daños y perjuicios prospere, el reclamante deberá evidenciar que ha sufrido un menoscabo provocado por la conducta negligente del reclamado.

Ahora bien, es menester precisar que, de las determinaciones de hechos contenidas en la *Sentencia* apelada, se desprende que estas se basan en los testimonios vertidos en el juicio. Ciertamente, el Tribunal de Primera Instancia les confirió entero crédito a las declaraciones que entendió verdaderas y descartó las que concibió como inexactas o carentes de confianza, de las cuales surge de forma clara, categórica y contundente que la causa adecuada o próxima del evento de inundaciones que produjo la totalidad de los daños a la propiedad alegados por los reclamantes, lo fue el hecho de que el vertedero no contaba con un sistema adecuado de manejo de escorrentías luego de la construcción de la nueva entrada y que la parrilla erigida para captar agua no funcionaba adecuadamente porque no cumplía con el estándar de la industria. Además, el foro primario estimó que, como el Municipio no produjo los endosos de las agencias gubernamentales correspondientes que autorizaran la construcción de la nueva entrada al vertedero, lo cual conllevó la tala de una montaña y la impermeabilización del terreno para crear un camino, el apelante fue negligente no solo en el mantenimiento de esta estructura, sino que también en la cimentación de su actual vestíbulo.

Es relevante detallar que, el ejercicio de la apreciación de la prueba realizada por el foro de primera instancia en este caso no puede ser automáticamente sustituido. El juzgador de los hechos de este caso tuvo la oportunidad de ver y oír a los testigos declarar ante sí, evaluó sus declaraciones a la luz del *demeanor* de estos y les

adjudicó credibilidad. Por consiguiente, los testimonios desfilados fueron suficientes para establecer que la causa próxima o adecuada de la inundación del patio de los apelados fue la falta de mantenimiento a la parrilla y la negligencia en la construcción de la entrada del vertedero por parte del Municipio. De ahí que, las determinaciones de hechos formuladas en la *Sentencia* están cobijadas por una presunción de regularidad y corrección que les correspondía derrotar al apelante.

Ante ese escenario, y frente a la ausencia del más leve indicio de pasión, prejuicio o parcialidad en la apreciación de la evidencia oral por parte del foro sentenciador, no se justifica que intervengamos con las determinaciones de hechos formuladas. Sin embargo, el Municipio nos solicita que sustituyamos el ejercicio de la apreciación de la prueba oral realizado por el Tribunal de Primera Instancia. A tales efectos, reclama que acojamos la versión provista por su perito, el ingeniero Colón Vincenty, sobre la causa adecuada del suceso en controversia, en cuanto a que este no fue provocado por la construcción de la entrada del vertedero y por la carencia de un sistema adecuado de manejo de escorrentías. Específicamente, el perito adujo enfáticamente que, luego del desarrollo urbanístico del área, menos escorrentías pluviales provenientes del vertedero arribaban al sumidero ubicado en el patio de la residencia de los reclamantes.

Sin embargo, el informe pericial preparado por el ingeniero Colón Vincenty se contradice en sus conclusiones, debido a que reconoció que el área no era una zona inundable, a pesar de asentir categóricamente que la propiedad estaba ubicada en una zona históricamente inundable. Asimismo, el foro apelado precisó no brindarle credibilidad al testimonio e informe pericial del ingeniero porque la conclusión que sustenta es que se recibe menos agua luego de la construcción de la entrada del vertedero municipal

porque es discordante con el testimonio creíble de los apelados y con las fotos aéreas contenidas dentro del informe pericial del geólogo Jesús Torres, el cual fue perito de la AAA.

Colegimos entonces que esto es causa suficiente para que el TPI descartara esta prueba, ante su evidente ausencia de confiabilidad. Las opiniones del perito fueron impugnadas en el juicio. Además, la evidencia presentada a través de testigos de los hechos en controversia demostró la falta de méritos de esta opinión pericial. La norma es clara en cuanto a que los tribunales no están obligados a seguir ciegamente la opinión de un perito, dado que están en plena libertad de adoptar su criterio propio en la apreciación y evaluación de la prueba y hasta de descartar una opinión pericial, aunque resulte técnicamente correcta. *Prieto v. Maryland Casualty* Co., 98 DPR 594 (1970).

Por otro lado, el apelante recalca en su tercer señalamiento de error que no se configuró una incautación de hecho de la propiedad de los apelados y, por ende, que no procedía la causa de acción de expropiación a la inversa.

Según esbozado anteriormente, el derecho al disfrute de la propiedad es de rango constitucional, pero puede ceder ante ciertas consideraciones de interés público. Por esto, el Estado tiene la facultad de limitar el derecho a la propiedad y adquirir la titularidad de un predio privado a través de la acción de expropiación forzosa si el bien privativo ha de utilizarse para un propósito público o social. Empero, este proceso debe concretizarse en cumplimiento con el debido proceso de ley y mediando la justa compensación.

A pesar de esto, existen circunstancias anómalas mediante las cuales el Estado puede inmiscuirse en un predio privado sin haberse instado previamente una acción de expropiación forzosa y sin la consignación de la cuantía correspondiente a la justa compensación: esto es, mediante la incautación de hecho o física de la propiedad, o a través de alguna disposición reglamentaria. La

acción de expropiación a la inversa se puede incoar, como excepción, cuando el ente gubernamental ocupa física y extrajudicialmente un predio privado. Así, el propietario de la finca está facultado para presentar esta causa de acción contra el Estado si no se ha iniciado un trámite judicial para que se le expropie el predio conforme a derecho. Empero, esta acción no implica que el ente gubernamental se convertirá automáticamente en un titular involuntario de la propiedad ocupada; su deber es compensar al propietario y situarlo en una posición económica equivalente a la que ostentaba previo a la incautación. Por esto, el Estado puede optar por expropiar el predio o meramente indemnizar por los daños causados durante el tiempo que ocupó la propiedad ajena. Mediante esta causa de acción, el propietario puede recuperar los daños provocados por la intervención indebida del ente gubernamental con su derecho dominical.

En el caso ante nuestra consideración, el señor Muñoz Pérez y la señora Lugo Cordero entablaron, junto con su demanda de daños y perjuicios, una acción de expropiación a la inversa contra el Municipio. Como se ha reseñado, esta causa de acción procede cuando el Estado ha llevado a cabo una incautación física y extrajudicial de un predio privado sin haber mediado la justa compensación procedente, según las disposiciones en ley, lo cual ultraja el derecho propietario de los dueños del terreno ocupado. Coincidimos con la determinación del foro primario sobre que se configuró una incautación de hecho sobre la finca de los apelados.

Colegimos así que el estancamiento permanente de aguas insalubres en el patio del predio en controversia *impide* su uso; además, cuando transcurren eventos de lluvia significativos, se ve *limitada* la utilización que se le da al sótano de la residencia. Como ya hemos determinado que el estancamiento de estas aguas en el sumidero fue producto de las negligencias del Municipio en la

construcción y mantenimiento de la entrada del vertedero que perpetuaron la acumulación de sedimentación que saturó el terreno, y como esto impide que se utilice adecuadamente la propiedad, hubo una incautación de hecho tácita que incide tajantemente sobre el derecho dominical de los apelados. Por esto, procede acumular y declarar ha lugar a la causa de acción de expropiación a la inversa.

Por último, el Municipio bosqueja que el foro apelado actuó desacertadamente al conceder múltiples remedios originados de un mismo daño y, además, que las cuantías otorgadas por el tribunal rebasaban el límite legal concerniente a la responsabilidad civil extracontractual de los entes municipales por sus actos u omisiones negligentes que resultaron en daño a una propiedad privada.

Según hemos trazado, la doctrina de la compensación múltiple establece que no se podrá resarcir más de una vez a una persona por un daño estribado de los mismos hechos. Es decir, no proceden varias compensaciones por un mismo evento, sean concurrentes o consecutivas; se debe escoger el remedio más adecuado o beneficioso como remedio final, aunque se incidan varias disposiciones de ley con un acto o una cadena inseparable de sucesos que resultaron en un menoscabo. Asimismo, nuestros preceptos legales contemplan que, cuando existan diversos reclamantes en un pleito o múltiples causas de acción sobre daños y perjuicios contra un municipio que emanen de una misma actuación negligente, impera un límite sobre la cuantía a resarcir, de ser hallado responsable el ente gubernamental; la cantidad total a indemnizar no puede rebasar los $150,000.00.

En el recurso a justipreciar, el TPI condenó al Municipio satisfacer: (1) **$50,000.00** en angustias mentales para cada uno de los demandantes; (2) **$100,000.00** por los daños a la propiedad; (3) la **justa compensación** por el valor de la propiedad debido a la incautación de hecho del predio, y (4) $35,000.00 por honorarios de abogado por entender que el Municipio incurrió en conducta

temeraria. Colegimos que el cuarto error apuntalado por el apelante *sí fue cometido*, debido a que existen **tres** partidas distintas dirigidas a indemnizar los daños causados por la conducta negligente del Municipio, lo cual incluye la justa compensación relacionada con la acción de expropiación a la inversa.

Resulta innecesario pormenorizar los detalles sobre la justa compensación, debido a que ya los daños a la propiedad por sí solos justifican la concesión de una partida de esta naturaleza. No obstante, de la *Sentencia* apelada y del expediente, se desprende que la propiedad de los apelados fue tasada por alrededor de $100,000.00, lo cual funge como su valor y, así, la cantidad que les correspondiese por la justa compensación por la expropiación a la inversa acaecida.

Asimismo, las cantidades generadas por la negligencia del Municipio rebasan el límite estatutario impuesto por sí solas. [5] Por ende, procede adecuar el reparo monetario adjudicado para que se ajuste a los contornos establecidos en ley, los cuales responden a un interés público mayor. Consecuentemente, dictaminamos que la cantidad total que el Municipio le debe indemnizar a los apelados por los daños y perjuicios sufridos es de **$150,000.00**: (a) por angustias mentales que se dividirán en **$75,000.00** para la señora Lugo Cordero en su carácter personal y **$75,000.00** para la Sucesión, lo cual representaría **$25,000.00** para cada coheredero.[6]

---

[5] Recalcamos que permanece *intacta* la sanción de $35,000.00 por honorarios de abogado impuesta por foro primario a raíz de la conducta temeraria exhibida por el Municipio durante el litigio porque esta no surge de los mismos hechos que propiciaron el comienzo del pleito; en otras palabras, es una partida independiente que debe ser satisfecha.

[6] Esto quiere decir que, la señora Lugo Cordero, la señora Muñoz Lugo y el señor Muñoz Lugo tienen derecho a recibir $25,000.00 *cada uno* por las angustias mentales *sufridas por el señor Lugo Pérez*, a estos ser sus continuadores jurídicos y, por ello, haber heredado esta causa de acción; así, estas dolencias compensadas corresponden a las vividas por el señor Lugo Pérez, uno de los demandantes originales.

**IV.**

Por los fundamentos que anteceden, los cuales se hacen formar parte de este dictamen, se *modifica* la *Sentencia* apelada solo a los fines de ajustar la cuantía total a resarcir por el Municipio; así variada, se *confirma* la *Sentencia* pronunciada por el TPI.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones